Good morning. May it please the court. My name is Eitan Kasteljanich. I am representing Dimitria Candelaria in this appeal. Candelaria has been experiencing severe back pain for many years. She had to have extensive back surgery in May 2005. She continues to require pain medication for her ongoing pain and has also been receiving many injections. Candelaria has also been diagnosed with mental impairments including bipolar disorder, anxiety disorder and PTSD and has been receiving treatment including counseling and medication. Candelaria was previously approved for disability benefits between May 2005 and February 29, 2008. She had a hearing in March of 2008 and apparently agreed to a closed period. It looks like for the next year after that she tried to find work. She applied for jobs. She did what she could and then her condition was worsening and about a year later which was April 2009 she reapplied for benefits. That is the case that is before you today. I'd like to focus now on the ALJ's main errors that require reversal. First the ALJ erred by improperly evaluating Candelaria and determined that she was only able to perform part-time sedentary work because she was so limited in her ability to sit, stand and walk and I think this is very significant here, she needed to frequently change positions to relieve her back pain. He also said that she may exaggerate pain level. He did and the importance of that is if she exaggerates the pain level then a lot of the symptoms that she claims are undermined. Mr. Galey used four different tests to determine whether or not she was exaggerating her pain. Two of the tests came up that she was and two of the tests came up that she wasn't. He still stated his opinion as being those were her limitations based on his overall opinion. One of them was the squeeze test, right? I believe so and one of them was a heart, your heart rate not going up. It didn't show the bell, it showed that she was underperforming. I mean that's sort of objective, it's hard to figure out what's going on in people's minds but when somebody who's an expert administers his tests and construes them as being exaggeration then he's sort of cast out on the entire enterprise. But he didn't construe her tests as being exaggerations, he construed them as being exaggerated on two of the measures but not the other two and his conclusions were based on his overall view. If he had felt that she was exaggerating and for example if she had exaggerated on all four of the tests he wouldn't have opined she was limited to four hours of work per day. The other thing is that if this piece of evidence stood alone I think we'd have a bigger problem but it doesn't. She has, it's unquestionable that she had extensive back surgery. There's been numerous pain injections that she's received. She's still taking pain medication to this day and was at that time. So it wasn't like it was this stood alone and this kind of dovetails into my next argument which is the issue of the ALJ failing to discuss the evidence that supports her symptoms and her disability claim. The ALJ basically ignored, well mentioned a little bit of it but for the most part didn't mention the clinical findings from her physicians that were treating her for her back pain and he didn't mention the clinical findings of the psychiatrists and therapists who were treating her for her mental illness. Simply doesn't talk about that evidence and under the recent decision in Marsh that's not acceptable and in my brief I argue this issue but I cite to the regulations that say that an ALJ is required to base his opinion on all the evidence. Now we have Ninth Circuit case law that's basically says the same thing. You've got a treating physician who's treating you and documenting their treatment. An ALJ cannot simply disregard all of their treatment notes and when the ALJ rejected Candelaria's credibility, the credibility of her testimony, he did so largely in part on his analysis that her testimony wasn't supported by objective evidence but he can't on the one hand ignore all the objective evidence and then say hey there's no objective evidence supporting your complaints. What's the mental health evidence that the ALJ failed to discuss? Well this is the evidence from her treating psychiatrist Dr. Gardner and from her treating therapist there's several of them and what's important is that when you're getting treatment the purpose of the treatment is to treat you. The purpose is not to say what your limitations are and for better or for worse I think for worse no one ever asked her treating psychiatrist or therapist well what are her limitations? So we don't have specific statements from them describing limitations. What we have is specific findings in which they describe their clinical findings which are consistent with her testimony about her limitations. Well I noted in there's a report from the Postvoit, I think that's how you pronounce the name, Postvoit who was the mental health psychologist that the ALJ did rely on and he had a checklist that he went through and he rated her as moderately limited. I'm not sure if that's true. I'm just curious. I didn't see that you argued that to the district court, or I mean to the ALJ did you? Or to the district court? What we have to bear in mind is, I believe I did argue it, but what we have to bear in mind is that Dr. Postvoit never met, treated, examined, evaluated anything. Well I thought this might help you. Well it does in the sense that the moderates, I mean I do argue that the moderates, she's supposed to then describe that in her narrative and there were so many moderate limitations but she didn't describe it in her narrative. But what's more important about her opinion is that it predates much of the mental health evidence in this file. She looks at the file, reviews the file, and states an opinion based on her file review that was an incomplete file review. So it's really I think that the clinical findings of her therapists and psychiatrists who were actually treating her provide stronger support for her testimony about her limitations than a non-examining psychologist who'd never treated her. If you don't have any more questions I would like to reserve time for rebuttal. Good morning, may it please the court, Jordan Goddard appearing on behalf of the Commissioner. Ms. Candelaria has limitations from her mental and physical impairments, however the ALJ reasonably found that they were not disabling. Regarding the physical impairments, one of the most notable facts in this case is Ms. Candelaria's decision to engage in a wrestling competition during the period where she alleges she was disabled due to back pain. This is frankly almost absurd and Ms. Candelaria has never provided any sort of explanation for this other than to fault the ALJ for not going into greater depth at the hearing about the condition. Someone who claims to have disabling back pain, it's simply absurd to think that she would voluntarily engage in a wrestling competition. She may also have disabling mental conditions if she engages in a wrestling match. I guess that is one way to interpret the evidence, but I'm not sure that there's any evidence in this file that says that her mental limitations are of the nature where she would be ignoring back pain that she claims is debilitating and participating in some sort of organized wrestling competition, which it appears that this was not just an altercation, but an actual organized wrestling competition by her description. Well, I share your skepticism about her condition and the reflection that is cast upon it by the wrestling match, but I had trouble understanding really what it was, how organized it was, whatever. There are a few mentions of it and there's no elaborate description of it. I agree, Your Honor. She does at 441 actually give in her own handwriting a somewhat brief description, but I think that might be the best one we have in the record here. I would also like to touch on Dr. Postavoy. As the court correctly noted, the ALJ did not make any mention in any way, shape, or form of Dr. Postavoy or citation to her opinion at the district court level in any of the briefing that Ms. Candelaria submitted. I was quite thorough in making sure that that was the case, so this is a completely new challenge as to the ALJ's reliance on Dr. Postavoy. Did you say 441? Yes, Your Honor. 441 was the description of the wrestling competition in her own words. There are a couple other citations to it in the record, 373 and 437, but 441 I think was the clearest. It seemed to be some sort of organized competition and not just an altercation or something that she had. In addition, regarding mental limitations, it's also notable that she told her treating counselor, Ms. DeSina, that when Ms. DeSina suggested that maybe Ms. Candelaria didn't need treatment anymore, Ms. Candelaria told her that she would like to continue treatment because her SSI lawyer told her that it was important that she remain in mental health treatment up through her hearing. So there was some significant evidence there that her engagement in treatment for mental health was maybe motivated by more than just a legitimate need for treatment there. There was also very early in the alleged period of disability, it basically coincides with the alleged onset date, she had some difficulties after she went to jail following a DUI that hit and run. She experienced some hallucinations, but her doctors noted that almost as soon as she got out of jail and started retaking her medication, she resumed equilibrium pretty readily. That's at 349. So it's pretty strong evidence from her own doctors that as long as she maintained that medication regimen, she was able to function at an acceptable level. In addition, there were a number of credibility factors that were cited by the ALJ, not just the ones mentioned by Ms. Candelaria's attorney. There was also the fact that she did not complete physical therapy in 2010 for her back impairment. She went to four sessions and then simply never returned. The physical therapist opined that it seemed that her back must be better because she just stopped showing up. This is relatively late. Do we have any other explanation for that besides the hypothesis? It's not a silly hypothesis, but do we have any actual evidence that that was why she quit coming? If I recall the last physical therapy session, the physical therapist had noted that she had met most of her treatment goals at that time, according to her report. So I think the inference that the therapist was drawing there was based on a combination of the fact that she had simply stopped going and the nature of her reports at the final therapy session, which indicated that she was experiencing improvement. So she was moving in the right direction at the very least. Of course, we also have, as discussed by opposing counsel, physical therapist Mr. Gellie's examination, which indicated that there was possible evidence of exaggeration, failure to give full effort during a grip strength test, as well as a failure for her heart rate to rise when she complained that her pain levels were increasing. While these things aren't just positive, they are valid factors to consider, along with other things like the fact that she was engaging in wrestling matches and indicating to her therapist that her reasons for attending therapy may have been motivated by more than a genuine desire for treatment. She gave inconsistent reports about side effects, reported much more significant side effects at her hearing than what she told her doctors. There was also just a general lack of objective evidence for the pain complaints, and when considered in total, the ALGA's decision and credibility finding in particular are supported by substantial evidence. Thank you. Thank you. We have a couple of minutes left. What about that wrestling match? I'm sorry? What about that wrestling match? What about that wrestling match? I want to first go to that treatment note he referred to. I asked the question first. I know. In that same, when she went to the emergency room saying, I was in this wrestling match, and then it just says, you can see what it says, three months ago was in a wrestling competition. What kind of wrestling? We don't know. Talks about her current medications. At that time... Her shoulder was pulled. Yes, it was. So it was a physical encounter with somebody. Apparently. Now we don't know, we don't know, was it arm wrestling? Was it wrestling, wrestling? We don't know. Nobody asked her about it. A wrestling competition and her shoulder was pulled. Right. So, like I say, we can't know from this record whether or not it was arm wrestling, wrestling, wrestling, whether or not she did it the one time, whether or not she ever did it again. And we also, as you pointed out, she's got bipolar disorder and has ups and downs and is not known to have great judgment. That doesn't involve imperviousness to pain. I mean, if she has a painful back condition, being bipolar doesn't make you impervious to pain as far as I know. No, but it might make you do things that you shouldn't, have a bad judgment about doing something that you shouldn't have done. Does it point to the point where you dislocate your shoulder? We can see her signing up for it, getting there and saying, my back hurts too much, I'm not going to do it. But she actually gets into it and stays in it long enough to dislocate her shoulder. Once again, we can't know exactly what happened because nobody asked her about it. The ALJ didn't ask her about it. Do we know how severe the injury was? She describes that my shoulder was pulled. Do we know more than that? We don't. Judge Kazinska suggested dislocated. Do we know that? We don't. I don't know much about it and I don't think it was even close. The injury there wasn't anywhere near as bad as what was going on with her back and her legs being numb when she stands as a result of her back. So those are the physical impairments. Pulled or dislocated, I mean, she had to have physical contact with somebody else to cause the shoulder to be pulled out of position, right? Some kind of contact, obviously. I don't know. Arm wrestling can hurt your shoulder. Why can't the ALJ take them into account in deciding she's malingering? Well, for one thing, this was a one-time event and there isn't evidence about what happened. If he wants to take it into account, it was incumbent upon him to ask her, hey, there's this wrestling competition here, what's going on? You tell me your back hurts but you were in a wrestling competition. What was the wrestling competition? What did you do? Nobody asked her that. He didn't ask her that. He's an impartial arbiter. He's supposed to help develop the record and figure out what's going on and he didn't ask her about that. That's not the reason she's disabled. It's her back. Once again, it's two parts. There's the back, there's the bipolar, there's the PTSD, etc. There's mental illness, there's physical illness. It's undebatable that she's got fusion on two levels in her back and that she's got lots of problems resulting from that. That's beyond debate and yet all of her testimony about all of that was thrown out the window because of, well, okay, I'll grant you the wrestling. That's unclear. We don't know but it doesn't sound good. Then two out of four of the tests that Mr. Gailey did coming up as he was not sure. This is a possible exaggeration and yet he still concluded she couldn't do more than part-time sedentary work based on all of the testing that he did and that she would require frequent changes of position. There's nothing wrong with a physical therapist who's testing her, taking into account her pain because you can't, if you're testing someone, having them do something and it hurts them too much to continue to do it. You don't force them to continue to do it. He concluded that her pain was preventing her and the judge, excuse me, the ALJ, was required to take her pain into account. Take into account the fact that she's on pain medications, getting pain injections, had back surgery and yet none of that evidence is discussed by the ALJ. What about this business about saying I'm doing the therapy because my lawyer told me to? Well, for one thing, that is slightly mischaracterized by opposing counsel. It's not clear that that was an attorney or a representative. It may have been someone at the state public assistance agency telling her we're applying for it. It doesn't identify who it is. I wasn't involved. I have no idea. But it says a rep. I'm not attributing anything to you, but she says I'm not really attending this because I need it. I'm attending it because I've been advised this is going to be good for my client. Whoever told her that? Somebody told her that. Nobody told her, and it doesn't say in that note that was cited by opposing counsel, that she was told to continue in this mental health treatment until her hearing. That's not in there. All it says is my rep advised me that I should continue. Now we, and once again, we don't know. Did they advise her that because they felt that she was not, you know, she's got bipolar disorder. It goes up and down, and she's had these periods where she stops taking her meds and she goes down. And so it could be it was response in part to that. Thank you. You are out of time. Okay. Thank you.
judges: Kozinski, Fletcher, Fisher